Thank you, Your Honor. May it please the Court, respected Counsel, this case implicates... Counsel, would you identify yourself for the record? My apologies. Tom Monaghan, Federal Defenders of the District of Idaho, on behalf of Marcus Koepinick. May it please the Court, this case implicates the core of Fourth Amendment protection, the right that we all have to be free from government intrusion in all parts of our home. The District Court erred when it found that Marcus didn't do anything to establish the subjective expectation of privacy in his father's room. Is that a factual determination, and don't we have to judge that by the clear error standard of review? Your Honor, if the Court looks at page 12 of the government's brief, we agree with the summary of the factual findings that it noted by Judge Windmill. And one of those was that Marcus lived in the room and had unrestricted access throughout. I think it was the Court's conclusion that based on the lack of affirmative evidence that Marcus used the bedroom with any regularity and for any purpose, that caused the District Court to find that Marcus lacked a subjective expectation of privacy. That is inherently a fact-intensive evaluation, is it not? And I guess at best what you're arguing is it's a mixed question of law and fact, but it seems to me that the facts predominate if the District Court heard evidence with regard to his living or usage of his father's room and made a finding of fact that the father essentially didn't permit his son to go into the room or the son never actually entered the room. And then from that, the Court makes a legal finding that he didn't have a subjective understanding that he had free access to his father's room. Have I got that correctly? I think that the Court is conflating the issue of having access to enter the room and actually exercising that access. The District Court But it's a mixed question of law and fact, so you've got to conflate them. I don't understand how else to do the analysis, Counsel. But if the Court looks at the District Court's order on pages 5, 6, and 8, what the District Court found was that although Marcus had access to his father's bedroom, he never exercised that access. He never actually went in the room. That was what caused the District Court to find that Marcus's expectation of privacy was contradicted. And isn't that inherently conflating fact and law? I don't understand how else the District Court can do the analysis without looking first at the fact of usage and then making a legal conclusion as to his subjective interest in the room. I think the first finding that the Court made was that by hiding the gun, his father expressed that that was some suggestion that Marcus didn't use the room. But from that, the District Court drew an erroneous legal conclusion, and that was that Marcus didn't have a subjective expectation of privacy because he had not demonstrated actual use. And our position is that you don't have to demonstrate actual use to have an expectation of privacy. Had the District Court said that? Suppose the evidence was that the father had said to the son, don't ever enter my bedroom. Would you concede that that would be sufficient to support the District Court's determination? I think if there was sufficient evidence of an explicit understanding, sufficient to rise to the level of constitutional significance, showing that there was some overt step to make that bedroom sufficiently separate from the contiguous hole of the home, then, yes, that would be sufficient in that situation. What does it take to meet that test? Well, in $40,955, this Court said that you need some kind of overt step. It's not enough to simply, in that case, it wasn't enough that the bedroom was designed to have a separate exit and entrance. You have to do something to make the particular area sufficiently separate from the contiguous hole of the home. And the critical point that I want to make is that Jeffrey's hiding the gun, if the District Court found that that meant that Marcus didn't have access, then that would be an erroneous ruling. And the reason is hiding the gun isn't inconsistent with Marcus having access. One could hide the gun in the room. Family members hide things from each other in places in the home where family members have access, but just what they hope is in a good hiding spot. And more importantly, it may be that Jeffrey chose to hide the shotgun in that part of the home, or the bedroom, because Marcus in actuality didn't go in the bedroom very often, if ever. Why doesn't that then support the District Court's conclusion that he didn't have a subjective expectation of privacy, sufficient to confer standing in his father's bedroom? Because there's no requirement of demonstrating actual use when you're dealing with a family home to have a subjective expectation of privacy. But you're arguing for a rule that if I live in the home, then I have access to every room within it, no matter what. And that's not what our case law says. Our case law says, I guess, in 49,000, if you put a lock on the door, if you have a separate entrance to the room, that bolsters the argument that you don't have a subjective expectation of privacy throughout the house. And that would be the case, but those aren't the facts of our case. In Olson, the Court found that status alone, as an overnight guest, was sufficient to give that guest a very broad expectation of privacy in the home, because the Court said societal expectations are that the guest will not be confined to a restricted area in the home. So your argument really comes down to, once Marcus establishes that he is a resident in his father's home, then he has standing to, based on a subjective expectation of privacy in every room of the home, regardless of physical changes to the structure or instructions that his father gave him? I respectfully disagree. That's not what we're saying, Your Honor. I'm saying that once you establish that you live in the home and there's evidence of unrestricted access throughout the home, then yes, you do, because of the special protection accorded the home historically under the Fourth Amendment, you would have standing to object to any government intrusion into the home. And that was the evidence in this case, that Marcus had unrestricted access. That was never contested, and Judge Windmill never found that that was contradicted. He found that Marcus's claim of an expectation of privacy was contradicted by the lack of evidence that he had used the room. And that's where I think the District Court went astray. Status alone, if you live in the home, is sufficient unless there's some over-evidence, some evidence showing that there have been steps taken by the family members to make part of the home sufficiently separate. If there's no such evidence, then the typical expectation is going to be that family members, at least sufficiently mature family members, have the run of the house. I counsel assume, without deciding, that there is standing. What about the search itself? Plain view okay or not? We agree with Judge Windmill's conclusion that once the officer went to a part of the room, which was beyond the scope of what Jeffrey had consented to, which was you can come in, but you can only look for Marcus, and in his opinion, in its opinion, the District Court said once the officer approached the pile of clothing, he was beyond the scope or that zone to which Jeffrey had consented. But I thought he walked over near the clothing in order to look at the space between the bed and the wall to make sure Marcus wasn't laying down on the floor hiding behind the bed. Well, the area, there was no evidence that the area where the pile of clothing was, was someplace that Marcus could have been hiding, and I think the government never made that argument. That's not my question. My question was the officer testified that he entered the room in order to look at, I'll call it the wall space, between the bed and the wall to see if maybe he was laying down on the floor and hiding behind the bed, either underneath the bed or so low on the floor that he had to get access closer to the wall, and that once he was in that location, which it seems to me he has a right to be based on the consent, why can't he seize a firearm, the butt of which is sticking out from the pile of clothing, just for his own safety in order to protect himself from attack while he's conducting the search of the house for the person who's wanted? Judge Windmill found that you can't, a police officer doesn't have the right to search, at least during the oral argument. Judge Windmill never said that a police officer can always search any firearm when he's conducting a search. For example, if you have a rifle sitting mounted on the wall or that type of thing. But the officer testified that he was concerned for his safety, did he not? Which was one of the reasons why he wanted to see what the firearm was. But once he approached that firearm, he went beyond the area where Judge Windmill found that he could have reasonably been looking for Marcus. And Judge Windmill noted that throughout this search, he was not afraid of Jeffrey.  Well, it's not just Jeffrey that he has to be concerned about, counsel. We're talking about, in essence, a protective sweep of the premises. Because as I understand it, there were four people on the premises, and initially one lone officer and then eventually a backup officer arrived. But they're still outnumbered four to two. So why shouldn't the officer be concerned that while he's searching for somebody that he has an arrest warrant for, one of the other people in the house might gain access to a weapon and use it against him? There was no testimony from the officer expressing that concern. The government never argued that that was the basis for the search. And Judge Windmill never found that that was a reasonable basis under the Fourth Amendment. I mean, we have the record before us. We can affirm the district court on any ground supported by the record, can we not? Yes, sir. But, again, I don't think under these facts where Jeffrey was known to this officer, the officer never expressed any concern for his safety during this search. It was basically Judge Windmill, I think, found an excuse to go to a location where he didn't have permission to go. And I think if we take the entirety of the circumstances, looking at the way this search was conducted, there wasn't that type of safety concern sufficient to justify the search on a protective sweep. Thank you, Counsel. Your time has expired. We'll hear from the government. Thank you, Your Honor. May it please the Court and Counsel, I'm Justin Watcott, representing the government from the District of Idaho. We do believe that under these facts, the district court correctly concluded that the defendant did not meet his burden of showing a subjective expectation of privacy. And I think the court is correct in stating that this is a very fact-intensive inquiry. It requires the defendant to show by his conduct that he has sought to maintain something as private in the place searched. And under these facts, the district court correctly concluded that the defendant did not meet that burden. The evidence... The state of the record is just that he never went into the room. Does that, is that sufficient to establish that he had no subjective expectation of privacy in his father's room? Well, Your Honor, I think the evidence even went further than that because the district court found that the defendant's father's action of hiding the gun within that room manifested, at least inferred an expectation of exclusivity by the father. Essentially, he did not believe that Marcus would enter that room. So your argument is that by sticking the firearm in the pile of blankets or towels, whatever they were, in the corner of the father's bedroom, the father, knowing that his son never came into the room, thought that would be sufficient to hide it from him. And that is what the father testified to, that he placed it in the room in order to hide it from the defendant. It's also noteworthy that that is what the defendant's father told the officer at the scene. He did indicate at the scene that he had placed that firearm into the room in order to hide it from the defendant. And the district court placed emphasis on that and indicated that that contradicted the defendant's claim that he had a subjective expectation of privacy in that room. Even though his father testified that he had access, there's no indication that the defendant ever exercised that access. How do you distinguish our decision in $40,955 in U.S. currency? Your Honor, this court in the $40,000 currency case placed specific emphasis on the fact that the claimants were the owners of the home. I think if you look through that opinion, it talks about the owners of the home having rights of access, possession, and exclusion in the room in which the items were seized. There also was some evidence that the father had placed some items in the safe in the room. And I think when you look at the specific circumstances within the home, which is what this court did in the $40,000 case, the facts of this case are materially different. But how is Marcus all that different from his parents? If he's a member of the family, the evidence is uncontradicted that he's an adult son living in the home. I guess we might have a different case if the search had occurred in the father's room and the father's room had a lock on the door and a separate entrance like Marcus's room had, but that's not where the weapon was found. And again, Your Honor, we would rely upon the district court's factual finding that the defendant's father placed the firearm within the room to hide it from Marcus. We do believe that that is a very important fact that shows that the defendant's father's expectation was that the defendant would not enter that room. We think that's very important. And again, I would point out that it was the defendant's burden to show that he had a subjective expectation of privacy, that he maintained some expectation of privacy in that room by his conduct. The defendant did not do that. The defendant's father testified at the evidentiary hearing. The defendant was there. He had the opportunity to question him. He had the opportunity to present evidence about whether he went into the room, whether he used that room for any purpose, whether he stored anything therein. He did not present that evidence. So we do believe that the district court was correct. What about opposing counsel's argument that the district court erred because it had found that he had kind of gone beyond the curtilage of where he was entitled to go, the officer? In other words, following up on Judge Tallman's colloquy with opposing counsel, this area of the bedroom where he actually did notice the butt of the rifle. Well, Your Honor, we did argue at the evidentiary hearing that this search was justified by plain view. And this is a very narrow action that the court found violated the Fourth Amendment, and that occurred within Jeffrey's bedroom. And essentially what the court found was that the officer could not determine that the firearm was illegal just by seeing the stock of the gun. That was something that we argued. We presented the officer's testimony to try and establish that what he observed, the stock of the gun, was enough for him to conclude that that firearm was illegal. The district court held otherwise. The district court held that it was not immediately apparent after viewing that firearm that it was illegal. But the action of the officer that the court found violated the Fourth Amendment was really a couple of steps. The officer was lawfully within that room looking for the defendant pursuant to the valid consent given by the defendant's father. As he was in that room, he observed the firearm, and by his testimony, stepped maybe five feet, I think he testified, for a closer inspection of the firearm. Again, we argued at the district court level that that was reasonable. Why didn't you argue that the seizure in plain view was justified under the protective sweep doctrine in order to protect the officer from assault? Your Honor, we did question the officer about that and tried to establish a record. I did not feel that the officer had articulated it sufficiently, and frankly, it probably was a mistake. Well, you didn't brief it. Again, Your Honor, it probably was a mistake to not argue that for safety reasons he should have been allowed to seize that firearm. At the time that he observed the firearm, the defendant's father had gone out into the hallway. I don't believe there was any evidence that the officer testified that at the time he seized the firearm, he had a specific concern for his safety from someone within the home. I think the court points out a very good issue when it says that he could have had a fear for the defendant. It was the defendant that he was looking for. The defendant was a fugitive. And so we think that the court could have found that the seizure of that firearm was justified and reasonable as per the officer's safety concern. It was not something that was specifically addressed at the district court level by the district court or, frankly, by the parties. I mean, I don't understand how I can get over the fact that you didn't argue it and therefore you waived it, haven't you? And, Your Honor, the court can review this de novo. As the court indicated, you have the entire record before you, and I think this court can affirm on any grounds under the Fourth Amendment. Again, we believe that the district court was correct in simply finding that the defendant did not have a subjective expectation of privacy. Katz is a two-part inquiry. It's the defendant's burden. And once the district court finds that the defendant doesn't have a subjective expectation of privacy in the place searched, that can be the end of the inquiry. And that is essentially what the district court found. And we think that the district court was correct. If there are no additional questions, I'll cede my time. Before you leave, do I understand correctly that the appellant is scheduled to be released in a couple of weeks, on the 3rd of January, is that right? That sounds correct, Your Honor. I believe he received a 24-month sentence and he's served about that much time. All right, thank you very much. The case just argued will be submitted for decision.
judges: Ezra, O'scannlain, Tallman